[Cite as *State v. Cornick*, 2014-Ohio-2049.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99609**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## PHILLIP R. CORNICK, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
REVERSED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-563092-B

**BEFORE:** Stewart, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 15, 2014

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Christopher D. Schroeder
        Daniel M. Kasaris
        Matthew E. Meyer
Assistant County Prosecutors
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEES PHILLIP CORNICK, RICHARD UPCHURCH, P & E TECHNOLOGIES, INC. AND VS2 WORLDWIDE COMMUNICATIONS, L.L.C.**

Donald J. Malarcik
The Gothic Building
54 E. Mill Street, Suite 400
Akron, OH   44308

Mark E. Schamel
Cathy A. Hinger
Joshua D. Greenberg
Womble, Carlyle, Sandridge & Rice, L.L.P.
1200 Nineteenth Street, N.W., Suite 500
Washington, DC   20036

**ATTORNEY FOR APPELLEE GEORGE GEORGEKOPOULOS**

David G. Phillips
17921 Lakeshore Boulevard
Cleveland, OH   44119

**ATTORNEY FOR APPELLEE PETE GEORGEKOPOULOS**

Edward A. Heffernan
Skylight Office Tower
1660 West 2d Street, Suite 410

Cleveland, OH 44113

**ATTORNEY FOR APPELLEES CHRISTOS KARASARIDES, JR., CKARE CORP., AND ELITE ENTERTAINMENT, INC. DBA VS2 MARKETING GROUP**

Brian Pierce
The Gothic Building
54 East Mill Street, Suite 400
Akron, OH    44308

**ATTORNEY FOR APPELLEE MICHAEL KOTY**

Gregory S. Robey
Robey & Robey
14402 Granger Road
Maple Hts., OH 44137

**ATTORNEYS FOR APPELLEE NEIL SARCYK**

Clare C. Christie
Roger M. Synenberg
Synenberg & Associates, L.L.C.
55 Public Square, Suite 1200
Cleveland, OH    44113

MELODY J. STEWART, J.:

{¶1} In the midst of a pretrial hearing in a prosecution against multiple defendants accused of operating internet cafes and using sweepstakes software in violation of gambling and conspiracy laws, James D. May, the assistant prosecuting attorney on the case, appeared before an Ohio senate committee in support of a bill that would outlaw internet cafes. May's testimony mentioned that internet cafes used sweepstakes software written by VS2 Software Systems, Inc., one of the defendants in the criminal prosecution. When the hearing resumed, the court learned that May's testimony had been arranged and facilitated by lobbyists representing casino interests supporting legislation to shut down internet cafes. The court also learned that May brought the lead investigative agent in the prosecution to testify before the senate committee. That agent was not only a witness in the hearing, but had been on the witness stand when the pretrial hearing was interrupted to allow May to testify before the senate committee. The court granted a motion to disqualify May over the state's objection, finding that May had appeared to "publicly suggest[ ] the Defendants were guilty as charged." In the court's view, May's actions created "at least the appearance of impropriety and warrant disqualification," lest the public lose confidence in the fairness and integrity of the proceedings.

{¶2} The state argues that the court erred by applying an improper standard when deciding whether to grant the motion to disqualify. It maintains that the "appearance of impropriety" standard used by the court is one that applies solely to judges, not to lawyers. The state also argues that before the judiciary can interfere with the

prosecutorial function by disqualifying a prosecuting attorney, there must be a showing of actual prejudice for disqualification. It maintains that even had the court applied the correct standard, it acted precipitously by disqualifying May in order to avoid even the appearance of an impropriety, without bothering to determine whether any impropriety actually existed.

I

{¶3} We should state at the outset that May's testimony before the senate committee was not a good idea, although in fairness to May, the idea was not his. A lobbyist for the casino industry contacted the Cuyahoga County prosecuting attorney to inquire whether he would testify before the senate committee in support of legislation to outlaw internet cafes. The prosecuting attorney expressed his interest in supporting the legislation, but said that his schedule did not permit him to testify. May was told to go instead.

{¶4} May should have pointed out to his superiors that he was in the middle of a hearing conducted pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("*Franks* hearing") to determine if material misrepresentations made in an affidavit submitted in support of a search warrant were made knowingly or in reckless disregard for the truth, thus rendering the search unreasonable. The witness May called to support the reasonableness of the affidavit was the same agent he took to Columbus. With May's testimony arranged and facilitated by lobbyists for casino interests who wished to ban gambling competition (one lobbyist arranged the testimony; a

second lobbyist met May and the agent at the statehouse and provided logistical help), it is difficult to see how May could not have considered that his testimony would provoke an outraged response from the criminal defendants. With an ongoing case involving the same issue about which he was testifying, May had no upside in going to Columbus. He simply invited the motion to disqualify.

## II

{¶5} The court utilized the wrong standard in concluding that May's senate testimony gave the appearance of an impropriety.

{¶6} Rule 1.2 of the Ohio Code of Judicial Conduct states: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." That same standard used to apply to lawyers, too, under Canon 9 of the Code of Professional Responsibility. EC 9-6; *Columbus Bar Assn. v. Plymale*, 91 Ohio St.3d 367, 371, 745 N.E.2d 413 (2001).

{¶7} The Code of Professional Responsibility, however, has been superseded by the Ohio Rules of Professional Responsibility. The most recent version of the rules for the professional conduct of lawyers, effective January 1, 2012, contains no such limitation on a lawyer's conduct. In fact, the word "impropriety" does not appear in the rules of professional conduct (it appears once in the comments to Rule 1.11 relating to special conflicts of interest for former and current government officers and employees). The

court's application of the code of judicial conduct as the touchstone for May's conduct was error, and the order of disqualification can be reversed on this basis alone.

### III

{¶8} Even had the court used the correct standard for disqualifying an attorney, the facts would not support an order of disqualification.

{¶9} A lawyer's conduct in pretrial proceedings is governed by Rule 3.6(a) of the Rules of Professional Conduct:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

{¶10} May made a public statement when he testified before the senate committee; the questions before us concern the content of his statement and whether that statement had a substantial likelihood of materially prejudicing the trial of VS2 and its principals, defendants Phillip Cornick and Richard Upchurch.

### A

{¶11} When ruling on the motion to disqualify May, the court noted that it did not have a transcript of his testimony before the senate committee. It summarized May's testimony as highlighting the prosecution of the criminal case against VS2, Cornick, and Upchurch, and that May's testimony "publicly suggested the Defendants were guilty as charged."

**{¶12}** We granted the state's motion to supplement the record on appeal with a transcript of May's testimony before the senate committee. VS2 argues that we cannot consider that transcript because the court did not have the transcript when ruling on the motion to disqualify.

**{¶13}** A court of appeals "cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal based on the new matter." *McAuley v. Smith*, 82 Ohio St.3d 393, 396, 696 N.E.2d 572 (1998), citing *State ex rel. Brantley v. Ghee*, 80 Ohio St.3d 287, 288, 685 N.E.2d 1243 (1997). The flipside of this law is that the court ruled on the motion to disqualify without knowing exactly what May said to the committee. To be sure, VS2 cross-examined the agent who accompanied May and who listened to May's testimony. But there can be no doubt that a transcript of May's testimony would have been preferable to the recollection of a person who admittedly was not listening closely to May's testimony (the agent said he heard "bits and pieces").

**{¶14}** It is unclear why the court did not order May's testimony transcribed, particularly when its order of disqualification came nearly two months after May's senate appearance. The court's decision to disqualify would have been better informed if it was able to know precisely what May testified to as opposed to taking it on faith of a witness to that testimony who said that he "heard some of it." On this basis, we could find that the court acted arbitrarily and thus abused its discretion.

B

{¶15} The agent agreed that May spoke "publicly" about the case, but nothing in the transcript of the agent's testimony (the court did not question May) leads to the conclusion that May "suggested" that the defendants were guilty.

{¶16} The agent said that he recalled only two instances in May's senate testimony in which he mentioned VS2. The first was that May "made a reference to a dollar amount that had been associated with this case, 47 or 48 million dollars." The second was when May referenced testimony by an economist retained by VS2 — the agent thought that May "made a good point" by noting that the economist spoke only about VS2's "expenses but not profits * * *."

{¶17} There was no question that VS2 was the subject of some of May's testimony, but if we limit our review of the court's order solely to the agent's testimony as argued by VS2, we find nothing in the agent's testimony that would permit us to conclude that May suggested that VS2 was guilty. The takeaway from the agent's testimony was that May countered VS2's expert by focusing on VS2's profits. Profits are not proof of illegality any more than the lack of profit would be proof of legitimacy. The court reached its conclusion that May publically commented on the VS2's guilt by inferring beyond what the actual record before it showed.

2

{¶18} Even if there had been some proof that May publically suggested that the defendants were guilty, that suggestion would not establish actual prejudice.

**{¶19}** It is an unremarkable proposition that a prosecuting attorney would publically declare that he believes that a defendant under indictment for a criminal offense is guilty. Rule 3.8(a) of the Rules of Professional Conduct states that the prosecutor in a criminal case shall not "pursue or prosecute a charge that the prosecutor knows is not supported by probable cause." In this context, the term "probable cause" means more than just what is needed to obtain an indictment — it means that the prosecutor is "satisfied [he] will be able to establish the suspect's guilt beyond a reasonable doubt." *United States v. Lovasco*, 431 U.S. 783, 791, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

**{¶20}** All criminal prosecutions thus carry the implied understanding that the state believes a defendant is guilty. May publicly stated the prosecutor's belief in the strength of the prosecution.

**{¶21}** To the extent that May "suggested" that the defendants were guilty, that sentiment was one shared by the Cuyahoga County prosecuting attorney when announcing the indictments issued in this case. The prosecuting attorney issued a press release titled "Illegal Internet Café's Will No Longer Exist In Cuyahoga County" and stated:

> The individuals and companies named in today's indictment are operating, or working in close cooperation with the owners of an intricate internet gambling system known as "VS2" that is controlled by a computer server in the New Jersey headquarters of VS2 Worldwide Communications, LLC.

> The Ohio Investigative Unit of the Ohio Department of Public Safety, working with the U.S. Secret Service, have identified the principal operators and account holders of the VS2 gaming system as Phillip Cornick,

Edward Kaba, and Richard Upchurch. Over the last four years, these individuals have perpetuated the expansion of their VS2 gaming system into Ohio with the assistance of Ohio-based distributors and marketers of the system: George Georgekopoulos, Pete Georgekopoulos, Christos Karasarides, and Christopher Maggiore. These individuals have convinced many small business owners in Cuyahoga County that VS2 internet café gaming system operates as "sweepstakes," which are not illegal and unregulated in Ohio.

\* \* \*

Since February 2008, VS2 has profited from illegal gambling to the tune of over $48 million. Their profit of over $48 million represents only 25% of the proceeds from the illegal Internet gambling cafés in our County.

**{¶22}** The prosecuting attorney clearly branded the internet cafes as "illegal." That statement is not different from saying that the defendants are guilty, yet it does not appear that VS2 complained about the press release. May's testimony before the senate committee simply affirmed his belief that the state had sufficient evidence to prove that VS2 and the individual defendants were guilty of violating the gambling laws.

**{¶23}** It is important to note that May's statements were not made at trial, when it would have been improper for him to express his opinion on the defendants' guilt. *See State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). And since no jury had been selected, VS2 cannot argue that May's statements deprived it of its right to an impartial jury. In any event, the record shows that since the order of disqualification, VS2, Cornick, and Upchurch have all pleaded guilty. By pleading guilty, these defendants have waived their right to trial, including any claimed error that the state's actions tainted the jury pool. *See State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, at ¶ 77. Those defendants who did not plead guilty (Christos Karasides,CKare

Corp., and CKare L.L.C.) have not appeared in this appeal, so they are barred from arguing that May's statements caused them actual prejudice.

IV

**{¶24}** We opened this opinion by noting that May should not have testified before the senate committee when he was in the midst of a pretrial hearing, nor should he have gone to testify in the company of a government agent who was the primary witness in that hearing. The court's concern that May's actions created an appearance of impropriety were misplaced because the actual standard for disqualification is one of actual prejudice, not avoiding the appearance of impropriety. There was no evidence of actual prejudice, in part, because the court did not consider May's actual testimony. The evidence the court did have of what transpired at the senate hearing did not show that May suggested the defendants were guilty. Even if May did publically suggest the defendants were guilty, that statement would not cause actual prejudice because all criminal prosecutions carry the implied understanding that the state believes that a defendant is guilty. In any event, all of the defendants who are a party to this appeal have since pleaded guilty in this case, so as a matter of law they have waived the right to complain of May's conduct and there is no prejudice.

**{¶25}** This cause is reversed to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR